### Adams Express Co. v. Hundley.
### Same v. Hawkins.
### Same v. Ewing, et al.

(Decided October 19, 1911.)

## Appeals from Fayette Circuit Court.

1. Carrier—Shipping Stock—Prima Facie Negligence.—When a car in which stock is shipped breaks down, the breaking of the car makes out a prima facie case of negligence against the carrier, and warrants a recovery if there is nothing in the record to overcome the presumption of negligence.

2. Damages—Ordinary Care.—It is the duty of a shipper to use ordinary care to minimize his damages, and he cannot recover for a loss that resulted from his own want of ordinary care.

3. Instructions—Refusal to Give.—A judgment will not be reversed for a refusal to give an instruction that did not affect the result although it would have made the law clearer to the jury.

SHELBY & SHELBY for appellant.

ALLAN & DUNCAN for appellees.

OPINION OF THE COURT BY CHIEF JUSTICE HOBSON—
Affirming.

Appellees shipped a car load of blooded colts on June 15, 1905, by express from Midway, Kentucky, to Sheepshead Bay, New York, and brought this suit against the Express Company to recover damages on account of the delay of the stock in shipment whereby they were injured. On a trial of the case before a jury there was a verdict for the plaintiffs in the sum of $5,499. The court entered judgment on the verdict and refused a new trial. The express company appeals.

On the application of the owners of the stock, the express company sent a car to Midway on which the stock

were to be loaded. They were placed in the car and taken to Lexington, Kentucky, about midnight, and remained there until 5 a. m., when the car was attached to the passenger train which reached Cincinnati about 8:20 a. m.; and should have left Cincinnati on the Pennsylvania train at 8:30 a. m. But when the car was inspected at Cincinnati before it was put in the Pennsylvania train, it was discovered that the draft timbers had dropped down, and that the car was not in a safe condition to be put in the train. It was, therefore, left at Cincinnati, and the stock were left in it, as there was not time to supply another car. The car during the morning was backed out in the yard and repaired. When examined in the yard it was discovered that the bolts which held the draft timbers up, were broken. In two of the smaller bolts the breaks appeared to be old. In the large bolt, one-half the break appeared to be new and one-half old. New bolts were put in and the car was left standing in the yard until about 4 p. m. It was an intensely hot day, the car was placed in a very hot place and the stock confined in the car suffered greatly from the intense heat. At 4 p. m. they were again started on their journey, and went along without interruption until they reached Philadelphia, where the train on which they should have gone to New York refused to allow the car to be attached to it because a flagman could not be put in front, and the car was then left standing in the station at Philadelphia for some time. It was very hot, the place was full of smoke and soot and the stock again suffered much. They reached New York about fifteen hours late; and, according to the proof for the plaintiff, were in a very bad condition. While standing as above stated they became very hot, and when they were moved they were cooled off by the air which blew into the car as the train went on its way, some of them taking a violent cold. One of them died and the others developed a feverish condition, or pneumonia. They were shipped to be placed in the regular annual sale of yearlings which had been held by a certain company for some years. When they were sold there was a loss on them, to recover for which these actions were brought.

It is insisted for the express company that there was no proof of negligence on its part in furnishing a car that was out of order, or that its negligence caused an unreasonable delay in the transportation, or that the colts

were damaged by reason of the delay. But we think there was sufficient evidence to submit all these matters to the jury. It is undisputed that the car was defective when it reached Cincinnati, and was there properly refused by the Pennsylvania Company for transportation by it. There is no proof that the car had been inspected by any one previous to its inspection by the servants of the Pennsylvania Company at Cincinnati. Some evidence is offered of a negative character to show that no trouble was discovered in the car at Lexington, Kentucky, when it was put in the passenger train there. But that it was inspected before it was sent out for the stock to be put in it, or that it was in fact inspected at Lexington, Kentucky, is not shown. The rule is that when the car breaks it makes out a prima facie case of negligence against the carrier, and there is nothing in the record to overcome the presumption arising from the breaking of the car without any adequate cause. If the stock had gone through without the delays at Cincinnati and Philadelphia, they would not have been subjected to the heat they suffered while so delayed and would not have been liable to take cold as they did. There was sufficient evidence to take the case to the jury that the delay was unreasonable, and by reason of it the injury to the colts occurred.

The court instructed the jury, among other things, as follows:

"If the jury believe from the evidence that the defendant failed to exercise reasonable care to furnish plaintiffs with a car safe and suitable for the transportation of their stock from Lexington to Sheepshead Bay, and that by reason of such failure a car was furnished which was unsuitable or unsafe for the transportation of said stock from Lexington to Sheepshead Bay, and that by reason of the unsafe or unsuitable conditions of said car, it was detained at Cincinnati for repairs, and that by reason of said detention or by reason of any delays on the route resulting from said detention at Cincinnati, plaintiffs' stock was unreasonably delayed in their transportation from Lexington to Sheepshead Bay, the jury should find for the plaintiffs.

"If the jury find for the plaintiffs, they should find for them * * * in such sum * * * as was the difference, if any, between the reasonable market value at Sheepshead Bay of the stock * * * as it was when received * * * from the defendant, and the reasonable

market value of said stock as it then would have been if said stock had not been injured by the unreasonable delay, if any, in its transportation."

It is insisted for the defendant that the jury were told to find for the plaintiffs if the stock was unreasonably delayed in their transportation and that they were authorized to find a verdict for the plaintiffs although the stock were not injured by reason of the delay. But it will be observed that in giving the measure of damages, the court told the jury that they could only find for the plaintiffs the diminution in the reasonable market value of the stock by the unreasonable delay, if any, in its transportation. Under the two instructions which must be read together the diminution in value of the stock by reason of the delay was the only thing that the jury could take into consideration.

The defendant asked the court to give the jury these instructions:

"The jury are instructed that the testimony as to what prices the horses in question brought at the sale at Sheepshead Bay is not to be considered by them for the purpose of definitely fixing a standard by which to ascertain the depreciation in value, if any, but only as a fact to be considered with others in determining whether or not there was any depreciation in value, and, if so, its extent. In other words, if the jury find for the plaintiffs the measure of damages is not the difference between what said horses brought at said sale and what their value would have been if uninjured by the trip, but is the extent, if any, to which their fair vendible value had been depreciated by any breach of duty (if there was such) on defendant's part.

"If at the time in question the horses were sold the jury believe from the evidence that they were in such condition as that a fairly prudent and reasonable man would not, under all the circumstances in proof have offered them for sale, and that it could not have been reasonably expected that they would realize what they were reasonably worth even in their then condition, the jury should not take into consideration at all the prices which they brought at said sale, but should fix the damage (if they find for the plaintiffs) wholly irrespective of said prices."

The court refused to give the instructions and of this appellant complains. It insists that there was evidence

from which the jury might infer that the plaintiffs did not exercise ordinary care in selling the colts in New York and that this question should have been submitted to the jury by some such instructions as those asked. The instructions might properly have been given, but it will be observed that the court did not make the measure of damages to depend in any way upon what the colts sold for in New York. What they sold for in New York was allowed in evidence with the other proof to show what was their fair market value in their damaged condition.

Under the instructions of the court the selling price in New York was not the criterion by which the jury were to make their verdict. The reasonable market value of the stock if uninjured by the unreasonable delay, and its reasonable market value when injured by the unreasonable delay, were the criteria by which the jury were to be governed. While the instructions asked would have made the matter plainer, under all the evidence we do not see that if given, they could have had a material effect upon the finding of the jury. The owners of the stock were experienced horsemen and seem to have done the best they could, or to have used their best judgment, and we do not think that the instructions if given, would have affected the result.

Judgment affirmed.